IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| GREG WEATHERS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:05CV00866 SWW |
| | * | |
| TRIPLE M TRANSPORTATION, INC., | * | |
| | * | |
| Defendant. | * | |

**Memorandum Opinion and Order**

On March 15, 2004, Greg Weathers was employed by Marine Terminals of Arkansas, Inc. ("Marine Terminals") as a deckhand aboard the M/V AUSTIN STONE ("Austin Stone"). On that date, Weathers and other members of the crew of the Austin Stone assisted the M/V LIMESTONE LADY ("Limestone Lady"), a tow boat operated by defendant Triple M Transportation, Inc. ("Triple M"), in dropping off several barges in a Marine Terminals fleet and rearranging additional barges in the tow of the Limestone Lady. While wiring barges together in the Limestone Lady's tow, Weathers allegedly fell on Barge R8890 and injured his shoulder. Martin Marietta Materials, Inc. ("Martin Marietta") was the charterer and operator of Barge R8890 at the time. The barge was in the custody of Triple M at the time of Weathers' alleged injury.

Plaintiff Weathers filed this complaint on June 9, 2005, asserting negligence and unseaworthiness claims against Triple M. Claiming status as "an invitee sieracki [sic] seaman and/or borrowed servant" of Triple M,[1] Weathers asserts that Barge R8890 "was unreasonably strewn with rock and/or stone camouflaging a manhole and improperly secured hatch cover

---

[1]Compl. at ¶ 3.

which as a result of said failure to provide a seaworthy vessel and exercise reasonable care, Plaintiff fell through."[2]

Triple M answered and filed a third-party complaint against Marine Terminals and Martin Marietta.  Marine Terminals answered and filed a counterclaim against Triple M and a cross-claim against Martin Marietta.  In the cross-claim directed to Martin Marietta, Marine Terminals alleged that Barge R8890 was unseaworthy, that said unseaworthiness caused Weathers' alleged injury, that Marine Terminals was required to pay maintenance and cure to Weathers because of the barge's unseaworthiness, and that Marine Terminals was entitled to recover payments made by Marine Terminals to Weathers because of the unseaworthiness of Barge R8890. Martin Marietta filed an answer to Triple M's complaint and Marine Terminals' cross-claim, denying any liability for Weathers' injury and asserting it owed no duty to provide a seaworthy barge to Weathers or any other party involved.  Subsequently, Triple M voluntarily dismissed its third-party complaint against Martin Marietta. The only remaining claims against Martin Marietta are Marine Terminals' cross-claims for negligence and unseaworthiness.

Now before the Court is Martin Marietta's motion for partial summary judgment on Marine Terminals' unseaworthiness claim.  Marine Terminals responded to the motion and Martin Marietta filed a reply to the response.  For the reasons stated below, the Court finds the motion should be granted.

## Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[2] *Id.* at ¶ 4.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Matsushita*, 475 U.S. at 587 (citations omitted).  Further, summary judgment is particularly appropriate where an unresolved issue is primarily legal, rather than factual. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

## Discussion

According to the undisputed affidavit filed with Martin Marietta's motion for partial summary judgment, Martin Marietta operates a fleet of river barges which carry products it sells on the inland rivers.  These barges are unmanned and unpowered.  The Martin Marietta barges are transported by towboats and harbor tugs of other companies.  The towboats and harbor tugs have power and crews.  On March 15, 2005, Barge R8890 was chartered by Martin Marietta.

Barge R8890 is a "dumb" barge with no means of propulsion and no crew. Plaintiff Weathers has never been employed by Martin Marietta and was not assigned to Barge R8890 as a crewmember of that vessel at the time of his alleged injury. On March 15, 2004, Barge R8890 was being towed by the Limestone Lady, owned by Triple M. The Limestone Lady picked up Barge R8890 on the Mississippi River near Natchez, Mississippi on March 10, 2004, and delivered it to a facility in Smithland, Kentucky on March 17, 2004.[3]

Martin Marietta argues that under maritime law, the owner or operator of a vessel is only liable for unseaworthiness to crew members of its own vessel. Because Weathers was not employed by Martin Marietta and was not a crew member of Barge R8890, Marine Terminals' claim of unseaworthiness should be dismissed. In response, Marine Terminals argues the warranty of unseaworthiness extends to all seamen.

Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea." *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 441 (2001). Under the "doctrine of warranty of seaworthiness, the owner of a vessel traditionally is absolutely liable for any injury sustained by a crew member in the course of his employment. The Supreme Court has made clear that the owner's duty to furnish a seaworthy vessel is absolute." *Brogan v. United New York Sandy Hook Pilots' Ass'n, Inc.,* 213 F.Supp.2d 32, 438 (D.N.J. 2002) (citing *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 549 (1960)). "Examples of conditions that can render a vessel unseaworthy include defective gear, appurtenances in disrepair, insufficient manpower, unfit crew, and improper methods of loading or stowing cargo." *Britton v. U.S.S. Great Lakes Fleet, Inc.,* 302 F.3d 812, 818 (8th Cir. 2002).

---

[3] Mot. Part. Summ. J., Ex. A, Aff. of Jay Moreau.

In *Seas Shipping Co. v. Sieracki,* 328 U.S. 85 (1946), the Supreme Court extended the duty to provide a seaworthy ship, once owed only to seamen, to longshore workers. "Under *Sieracki,* vessels were liable as third parties to longshoremen for injuries resulting from the vessels' 'unseaworthy' condition. An action for unseaworthiness had previously been available only to seamen." *Gravatt v. City of New York,* 226 F.3d 108, 116 (2nd Cir. 2000). Several years later, in *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406 (1953), the Supreme Court reaffirmed the *Sieracki* seaman doctrine by extending the duty of unseaworthiness to an independent contractor repairman aboard the Pope & Talbot's vessel. The Court emphasized that

> Sieracki's legal protection was not based on the name 'stevedore' but on the type of work he did and its relationship to the ship and the historic doctrine of unseaworthiness. The ship on which Hawn was hurt was being loaded when the grain loading equipment developed a slight defect. Hawn was put to work on it so that the loading could go on at once. There he was hurt. His need for protection from unseaworthiness was neither more nor less than that of the stevedores then working with him on the ship or of seamen who had been or were about to go on a voyage. All were subjected to the same danger. All were entitled to like treatment under law.

*Id.* at 413. So,

> [p]rior to 1972 an injured longshoreman, entitled to compensation under the L.H.W.C.A., was precluded from suing his employer, but could seek relief from the vessel's owner if the vessel's unseaworthy condition caused the accident. When the unseaworthy condition was attributable to the employer's unworkmanlike performance, the shipowner could recover indemnity from the stevedore (employer). Hence, the longshoreman, in effect, recovered indirectly from his employer that which he could not recover directly.

*United States Lines, Inc. v. United States,* 593 F.2d 570, 571-2 (4th Cir.1979). In 1972, however, Congress increased coverage and compensation under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA") and abolished the longshoreman-employee's right to recover for

5

unseaworthiness. His right to recover from the vessel was preserved but was limited to an action for negligence. *Gravatt, supra.*

Emphasizing *Smith v. Harbor Towing & Fleeting, Inc.,* 910 F.2d 312 (5th Cir. 1990), Martin Marietta contends that a seaman may not assert a *Sieracki* claim for unseaworthiness against a third-party vessel owner/operator. Marine Terminals does not dispute that this is the law in the Fifth Circuit. However, it urges the Court, in the absence of Eighth Circuit law, to adopt the holding in *Turner v. Midland Enter., Inc.,* 2006 WL 527006 (E.D.Ky. March 3, 2006).

In *Smith,* the court considered whether a Jones Act seaman who was injured while performing seaman's work aboard a non-employer's vessel could sue the shipowner for unseaworthiness as a *Sieracki* seaman. At the time of the injury, Smith was working as a deckhand and crew member aboard the M/V TODD G, a tug boat owned and operated by his employer, Harbor Towing. On the date in question, TODD G was preparing to push two barges owned by Chotin Transportation, Inc. to another fleeting facility when Smith's captain instructed him to board the barges and rig them together for towing. According to Smith, when he attempted to straighten a tangled wire cable attached to a barge winch, he slipped and fell on diesel oil on the deck of the barge. Smith sued his employer, Harbor Towing, under the Jones Act and general maritime law. He also asserted a claim against Chotin, the barge owner, for general maritime negligence and seaworthiness. The district court found as a matter of law that Smith was not a crew member as to Chotin's barge and was owed no duty of seaworthiness. The Fifth Circuit agreed, noting that Smith had "a variety of possible remedies as a Jones Act seaman: maintenance and cure and a Jones Act negligence claim against his employer as employer, an unseaworthiness claim against his employer as vessel owner for any injury on the

M/V TODD G, and a negligence claim in maritime tort for Chotin's breach of duty of reasonable care." *Smith, supra,* 910 F.2d 313-4.  Accordingly, the Fifth Circuit held that an unseaworthiness claim under *Sieracki* could not be prosecuted against the vessel owner because Smith was not a crewmember of the vessel upon which he was injured.  *See also Coakley v. SeaRiver Maritime,* 319 F.Supp.2d 712 (E.D. La. 2004)(tugboat deckhand has no unseaworthiness cause of action against owner of barge on which he was injured; the plaintiff cannot be a crew member of a vessel with no crew); *Speer v. Taira Lynn Marine, LTD., Inc.,*116 F.Supp.2d 826 (S.D.Tex. 2000)(seaman injured while training on a barge has no unseaworthiness cause of action against barge owner because he was not a crew member); *Babbitt v. Hanover Towing, Inc.,* 7 F.Supp.2d 650 (E.D.N.C. 1998) (plaintiff, employed as a captain aboard a tugboat, had no employment relationship with defendant and thus cannot pursue claim for unseaworthiness of defendant's vessel; Fourth Circuit law does not permit a seaman to recover under doctrine of unseaworthiness in the absence of employment relationship); *Corrigan v. Harvey,* 951 F.Supp. 948 (D. Haw. 1996) (seaman cannot assert unseaworthiness cause of action against a vessel on which he is not a crew member); *Roulston v. Yazoo River Towing, Inc.,* No. 5:04CV199 DCB JCW, 2006 WL 516808 (S.D.Miss. March 2, 2006) (seaman, employed on defendant's tugboat, has no unseaworthiness claim for his injury on barge owned by another unless he can show special relationship between employer and owner of barge); *Baker v. Hasbrouck,* Civ. No. 91-124-FR, 1991 WL 240740 (D.Ore. Nov. 1, 1991) (crew member of one vessel who boarded another vessel and suffered an injury thereon not entitled to assert unseaworthy action against vessel on which he was not a crew member).

In *Turner*, the case upon which Marine Terminals relies for its response in opposition, the plaintiff was employed by an electric company and worked in its coal yard located on the Ohio River. His duties included operating conveyors, cleaning the coal storage pile, and working aboard the company's vessel, the M/V Shawnee, which was used to transport barges loaded with coal to its unloading facility. The plaintiff often participated in the process of transporting barges from the coal suppliers, who brought and left loaded barges in load fleets near the electric company's plant, to the unloading dock at the plant. After the barges are unloaded, the company returns them to an empty fleet where the coal suppliers retrieve them. One day, after the plaintiff and a co-worker had returned to the company's unloading terminal with a loaded barge, the co-worker threw a cable to the plaintiff, who was standing on the gunnel of the barge, when he fell and injured his knee. The plaintiff alleged he slipped on wet coal that had spilled onto the working deck and sued the coal supplier on whose barge he was injured. Noting that the Fifth Circuit had not ruled that the 1972 amendments completely abolished the *Sieracki* seaworthiness action, the district court found it was not bound by *Smith*, which it said has not been universally accepted outside the Fifth Circuit. The *Turner* court said: "Absent controlling case law, the Court finds no reason to depart from the well-established rule that the warranty of seaworthiness extends to those maritime workers who can claim 'seaman' status under the Jones Act." 2006 WL 527006 at *4. Marine Terminals invites the Court to adopt the holding in *Turner*.

The Court finds the reasoning set forth in *Smith v. Harbor Towing & Fleeting, Inc.* convincing. Plaintiff Weathers was not employed by Martin Marietta and he was never a permanently assigned crew member of the barge. In fact, the barge had no crew. His work aboard the barge was purely transitory and, as in *Smith*, he has a variety of possible remedies as a

Jones Act seaman, including his right to maintenance and cure, his right to sue his employer under the Jones Act, and his right to sue Triple M for negligence.  Accordingly, the Court finds the motion for partial summary judgment [docket entry 40] should be and is hereby granted. Marine Terminals' claim for unseaworthiness asserted against Martin Marietta is dismissed.

SO ORDERED this 31st day of March 2006.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE