IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| GREG WEATHERS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:05CV00866 SWW |
| | * | |
| TRIPLE M TRANSPORTATION, INC., | * | |
| | * | |
| Defendant. | * | |

**Memorandum Opinion and Order**

Before the Court is a motion for summary judgment filed by Third-Party Defendant Martin Marietta Materials, Inc. ("Martin Marietta") to which Third-Party Defendant/Cross-Claimant Marine Terminals of Arkansas, Inc. ("Marine Terminals") responded. Martin Marietta filed a reply to the response. For the reasons stated below, the Court finds the motion should be granted.

**Background**

On March 9, 2004, Triple M Transportation, Inc.'s ("Triple M"'s) M/V LIMESTONE LADY picked up nine Martin Marietta barges at Natchez, Mississippi. Martin Marietta had hired Triple M to push the barges up the Mississippi River from Natchez to Smithland, Kentucky. The barges were wired together with other barges in the tow of The LIMESTONE LADY to form a thirty-five barge tow. The captain of the LIMESTONE LADY was James Robertson.

One of the barges in the tow of the LIMESTONE LADY was Barge R8890, an empty, "flat deck" rock barge. Martin Marietta was the charter of Barge R8890 at all relevant times. The barge was a "dumb" barge, with no crew and no means of propulsion. In addition to paying

Triple M to transport its rock barges, Martin Marietta also paid an additional fee to Triple M for cleaning residual cargo which sometimes remained on the decks of barges after unloading. Triple M and Martin Marietta had an agreement whereby crewmembers of the LIMESTONE LADY inspected the barges for cargo on walkways or work areas, identified barges that needed cleaning, and then cleaned the barges. The primary purpose of removing such residual cargo was the safety of crewmembers working aboard the barges.

During the trip at issue, crewmembers of the LIMESTONE LADY cleaned the decks and walkways of numerous barges in the LIMESTONE LADY's tow. Apparently, residual gravel and small rocks were present on the stern (rear) of Barge R8890 when the LIMESTONE LADY picked it up in Natchez. Captain Robertson testified he could see from the wheelhouse of the LIMESTONE LADY the gravel and rock on the stern deck of Barge R8890 when he first picked it up.

On March 15, 2004, after Barge R8890 had been in the tow of Triple M for five days, the LIMESTONE LADY stopped at a fleet owned and operated by Marine Terminals, located on the Mississippi River near Blytheville, Arkansas. The LIMESTONE LADY made arrangements to drop off three loaded barges owned by another Triple M customer at the Marine Terminals' fleet. According to the evidence, Marine Terminals is a harbor company engaged in the business of building tows, fleeting and shifting barges, and operating a barge cleaning plant. One of its vessels was the AUSTIN STONE. Plaintiff Greg Weathers was a deckhand on the M/V AUSTIN STONE.

At 6:00 a.m. on March 15, crewmembers of the AUSTIN STONE began their work shift. About an hour into the shift, the AUSTIN STONE went out to assist the LIMESTONE LADY in rearranging her tow. Following the removal of the three barges, Weathers and the mate of the

AUSTIN STONE began laying and tightening wires on the barges remaining in the LIMESTONE LADY's tow.  Weathers stepped onto Barge R8890 near the bow (head) of the barge, then walked down the center.  When he reached the stern of the barge, he noticed gravel and small rocks lying on the deck.  Although he knew the barge had a hatch cover in the stern area where he would be working, he was unsure of its location, as it was concealed by residual cargo.  He proceeded nonetheless.

While working near the port stern corner of Barge R8890, Weathers stepped on an unsecured hatch cover, which he claims not to have seen because it was covered by two to six inches of residual rock cargo.  The cover gave way, Weathers' right leg slipped into the hatch and he fell to the deck, injuring his right shoulder.  The hatch cover had flipped on its side when Weathers stepped on it.  He stopped working and was taken to a doctor.  Weathers later underwent two surgeries on his right shoulder.

Weathers filed a complaint on June 9, 2005, claiming negligence and unseaworthiness against Triple M.  Triple M filed a third-party complaint against Marine Terminals and Martin Marietta.  Marine Terminals filed a counterclaim against Triple M and a cross-claim against Martin Marietta, alleging Barge R8890 was unseaworthy and that Martin Marietta's negligence contributed to Weather's injuries.  Triple M dismissed its third-party complaint against Martin Marietta, and the Court previously granted summary judgment to Martin Marietta on Marine Terminals' unseaworthiness claim.  Now Martin Marietta seeks dismissal of Marine Terminals' negligence claim.

## Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587 (citations omitted).  Further, summary judgment is particularly appropriate where an unresolved issue is primarily legal, rather than factual. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

**Discussion**

Martin Marietta argues it is entitled to summary judgment because the evidence is undisputed that it had no knowledge that there was residual cargo on walkways or work areas at the stern of the barge upon which Weathers claims to have been injured or that its hatch cover was ajar.  It argues the barge was in the custody of other parties who could observe and readily correct or avoid the hazards alleged, and had sole responsibility for doing so.  In response,

Marine Terminals contends there is no authority for Martin Marietta's argument that its delegation of barge cleaning responsibilities relieves it from its duty to exercise reasonable care or that Triple M assumed any duty or responsibility to clean Martin Marietta's barges. Marine Terminals argues that under the towing agreement, Martin Marietta had the responsibility to inspect its barges prior to pickup by Triple M, and Martin Marietta should have known the barge was unreasonably covered with rock and had it cleaned. In reply, Martin Marietta argues Marine Terminals, a non-party to the towing agreement, has no right to insist upon performance of the contract and, in any event, Martin Marietta had another agreement with Triple M regarding barge cleaning and inspection.

"It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care to those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 631 (1959). The towing agreement provides that Martin Marietta "will inspect the barges to be towed" prior to the delivery of the barges to Triple M. It also provides that Triple M "shall not be obligated at its expense to clean cargo compartments, decks, covers and/or other equipment of any barges tendered for towage by [Martin Marietta]." *See* Marine Terminal's Resp. to Mot. Summ. J., Ex. A. In addition to their towing agreement, however, Triple M and Martin Marietta had another agreement regarding inspection and cleaning of Martin Marietta barges that was in effect at the time of Weathers' injury. That agreement involved services not covered by the towing contract and called for separate consideration, as additional fees were paid by Martin Marietta for these services. The testimony of Captain Robertson and documents reflecting payment for barge cleaning demonstrates that the actual parties to this agreement were Martin Marietta and the individual deckhands who swept the barges, who kept track of their time and the portion of

Martin Marietta barges they cleaned and ultimately received the funds Martin Marietta paid for barge cleaning.  *See* Martin Marietta Br. in Supp. Mot. Summ. J., Ex. A, Robertson Dep. at 38-40; 96;  Ex. B, Moreau Aff., ¶¶ 13-15; Ex. D (Invoice).

"The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law."  *Withhart v. Otto Candies, L.L.C.,* 431 F.3d 840, 842 (5th Cir. 2005).  "[A] plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'"  *Canal Barge Co. v. Torco Oil Co.,* 220 F.3d 370, 376 (5th Cir. 2000).  The Court finds there is no evidence that Martin Marietta breached a duty of care.  Courts have recognized that a barge owner such as Martin Marietta satisfies its duty when the owner relies on other parties to care for and service its barges.  *See Cameron v. Consolidated Grain and Barge Co.,* 654 F.2d 468, 470-71 (7th Cir. 1981).  In that case, Cameron brought a negligence claim against a barge owner after he was injured while working on a barge, allegedly due to a defective grain door.  The barge owner "neither owned any towboats to push its barges nor employed any persons to load and unload barges."  *Id.* at 470.  Cameron contended the owner was negligent in failing to conduct its own inspection of the barge before leaving it in the fleet where he was injured.

In examining a barge owner's duty to inspect its barges prior to delivery, the Seventh Circuit noted that the owner "did not have any employees to inspect its barges for defects or items in need of repair."  *Id.*  Instead, the owner "relied upon barge cleaners and towboat employees to make such inspections."  *Id.*  Both the owner's barge manager and the owner of a barge cleaning company testified that a barge owner's reliance upon deckhands employed on towboats pushing the barge to notify the owner as to conditions needing to be corrected was an

6

industry standard.  According to these witnesses, the barge owner satisfied that duty even though the barge owner does not oversee the inspection and was unable to verify whether the inspection ever occurred.  *Id.*  Based upon this testimony, the Seventh Circuit rejected Cameron's claim of negligence, concluding that the owner proved that the barge "was inspected in a reasonable and safe manner consistent with industry standards," and ruling that the owner had fulfilled its duty to Cameron and was entitled to judgment as a matter of law.  *Id.* at 472-73.

The evidence here establishes that Martin Marietta and Triple M had entered into an agreement regarding the cleaning of the barges and had done so prior to Weathers' injury.  The captain of the Triple M boat - James Robertson - and the Vice President of Martin Marietta - Jay Moreau - both testified that the agreement was in place.  *See* Martin Marietta Br. in Supp. Mot. Summ. J., Ex. A, Robertson Dep. at 96; Ex. B, Moreau Aff., ¶ 13-14.  An invoice for the inspection and barge cleaning service provided on the voyage involved in this case show such services had been provided.  *Id.* Ex. D.  Undisputed evidence establishes that Martin Marietta was never notified that the barge upon which Weathers was allegedly injured needed cleaning, although it had been inspected.  *Id.* Robertson Dep. at 37; Moreau Aff. at ¶ 11.  During the voyage at issue, Triple M crewmembers cleaned twelve Martin Marietta barges in tow.  *Id.* Robertson Dep. at 75.

Because Marine Terminals' allegations of negligence lack evidentiary support and are controverted by the evidence submitted by Martin Marietta, the Court finds there is no genuine issue of material fact in dispute and that Martin Marietta is entitled to summary judgment.

**Conclusion**

Accordingly, the Court finds the motion for summary judgment [docket entry 58] should be and is hereby granted. Marine Terminals' claim for negligence against Martin Marietta is dismissed.

SO ORDERED this 11th day of October 2006.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE